JUANA ESTELA, ETC., Plaintiff and Appellant, *v.* HEIRS OF BENITO MEDRAÑO, Defendants and Appellees.

No. 5528.   Argued June 19, 1931.—Decided November 29, 1932.

*V. M. Fernández* for appellant.   *O'Neill & O'Neill* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The district court sustained a demurrer to the complaint in an action of filiation and dismissed the action.   The plaintiff is a posthumous natural son.   His father died September 28, 1929.   The plaintiff was eight months old when the complaint was filed August 2, 1930.   The father and the mother lived in concubinage at the time of the conception and during

the pregnancy of the mother until the death of the father. There was no legal impediment to the marriage. Other averments of the complaint are: That from the time of conception the putative father, Benito Medraño, attended to the support of plaintiff; that he made the necessary preparations for the birth and talked about being the father of plaintiff; that the plaintiff has been from that time in continuous possession of the civil status of a natural child.

According to the provisions of section 119 of the Spanish Civil Code, which was in force in Puerto Rico until 1902, natural children were "those born out of wedlock of parents who, at the time of the conception of such children, could have married with or without dispensation." This definition was omitted from the Revised Statutes of 1902, but was adopted again in 1911. See Laws of that year, p. 235. It appears there as part of section 193 of the Civil Code. See also Compilation of 1911, section 3263. It reappears substantially in the same form in section 125 of the 1930 edition.

Apart from the obligation imposed by certain provisions of the Penal Code as part of the penalty prescribed for certain offenses, an action of filiation, when brought against the putative father or his heirs, was allowed under section 135 of the Spanish Civil Code only in the following cases:

"1. When an indisputable paper written by him, expressly acknowledging his paternity, is in existence.

"2. When the child has been in the uninterrupted possession of the status of a natural child of the defendant father, justified by the conduct of the father himself or that of his family."

To these subdivisions, as amended by the revision of 1902 (Revised Code, sec. 189), the following was added:

"3. When the mother was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while his parents were engaged to be married (relaciones amorosas)."

A fourth subdivision was added in 1911, as follows:

"4. When the child may present any authentic evidence of his paternity."

At the same time there were eliminated from subdivision 3 the words "or when the child was born while his parents were engaged to be married," and the words "both during her pregnancy and at the time of the birth of the child" were used instead of the words "during the pregnancy or birth of the child."

. Evidently, the primary purpose of the amendment was to eliminate the reference to the existence of a betrothal (*relaciones amorosas*) at the time of the birth as sufficient in itself to sustain a judgment for the plaintiff in an action of filiation. However, this amendment furnished an opportunity to improve the diction of the preceding clause. It is at least a debatable question whether the Legislature meant to substitute the conjunctive "and" for the disjunctive "or". If the Spanish version of the definition of natural children, as again adopted at the same time and in the same section, had been followed in the English text, there would have been very little doubt on this point. For the purpose of this opinion, however, we need not speculate as to which of the two should prevail.

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Holy Trinity Church* v. *United States,* 143 U. S. 457, 459.

See also *Smythe* v. *Fiske,* 23 Wall, 374, 380; and *Hawaii* v. *Mankichi,* 190 U. S. 197, 212.

Subdivision 3 of section 189, like the preceding subdivisions, both as originally adopted in 1902 and in the revision of 1911 (Comp. Stat., sec. 3263) is concerned with the question of acknowledgment. The first of these three subdivisions requires an express previous acknowledgment stated in writing. The second refers to other acts of acknowledgment, whether direct or implied, as a basis for establishing a status. In the third, as originally promulgated and as finally amended, the acknowledgment is inferred from the continua-

**146**

tion of the relations existing between the parents at the time of conception. In other words, the putative father is given the opportunity to deny his paternity and to avoid any presumption of acknowledgment by breaking his relations with the mother at any time prior to the birth of the child. This privilege of repudiation seems to be the most plausible and satisfactory explanation of the amendment, from the standpoint of an intention to substitute "and" for "or." It was not the intention of the Legislature that the right of action of an acknowledged natural son should be destroyed. by the mere fact that the father died shortly before the birth of the child. A posthumous child, born within three months or more after the death of the father, of parents who at the time of the conception and until the death of the father lived in concubinage, is entitled to a decree establishing his status as an acknowledged natural son.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Córdova Dávila took no part in the decision of this case.